IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID D. RICHARDSON,

                 Plaintiff,

    v.

KEVIN PIERCE, et al.,

                 Defendants.

CIVIL ACTION
NO. 17-2393

**OPINION**

**Slomsky, J.**                                                      **October 23, 2017**

## I.    INTRODUCTION

This case arises out of the execution of a search warrant at Plaintiff David D. Richardson's home. (Doc. No. 1 ¶¶ 2, 7.) Plaintiff alleges that Assistant District Attorney Kevin Pierce violated his constitutional rights when he approved the sufficiency of the warrant application for submission to a judicial officer prior to the search. (Id. ¶ 11.) Plaintiff argues that Defendant Pierce improperly relied on Pennsylvania Rules of Criminal Procedure 201(1) and 507.[1] (Id. ¶ 10.) He contends that these Rules apply to arrest warrants rather than to search

---

[1]    Pennsylvania Rule of Criminal Procedure 201(1) governs the issuance of search warrants. Rule 201(1) provides: "A search warrant may be issued to search for and to seize . . . contraband, the fruits of a crime, or things otherwise criminally possessed . . ." Pa. R. Crim. P. 201(1).

Pennsylvania Rule of Criminal Procedure 507 governs the approval of police complaints and arrest warrants by an attorney for the Commonwealth. The Rule provides:

    (A) The district attorney of any county may require that criminal complaints, arrest warrant affidavits, or both filed in the county by police officers, as defined in these rules, have the approval of an attorney for the Commonwealth prior to filing.

warrants.  (Id.)  Relying on this contention, Plaintiff, proceeding pro se, brings this suit under 42 U.S.C. § 1983, alleging that his Fourth and Fourteenth Amendment rights were violated.  (Id.) Defendants are Kevin Pierce, an Assistant District Attorney for Chester County, Thomas Hogan, the District Attorney for Chester County, and the County of Chester.  (Id.)

In Count I of the Complaint, Plaintiff alleges that Defendant Pierce violated his Fourth and Fourteenth Amendment due process rights under the United States Constitution by advising Detective John DiBattista that the search warrant application the Detective had prepared was sufficient and supported by probable cause during the "investigative phase" of Plaintiff's criminal prosecution.  (Id. ¶ 11.)  Plaintiff alleges in Count II that Defendant Hogan violated his Fourth and Fourteenth Amendment rights because he had "final policymaking" authority and failed to have in place a policy on advising police as to the existence of probable cause during the "investigative phase" of a criminal prosecution.  (Id. ¶ 20.)  Finally in Count III, Plaintiff brings a Monell claim against Chester County, claiming that it violated his Fourth and Fourteenth Amendment rights by failing to have in place a policy to prevent district attorneys from advising police on whether probable cause exists to issue a search warrant.  (Id. ¶ 29.) Before the Court are Defendants' Motions to Dismiss the claims against them under Federal Rule

---

(B) If the district attorney elects to proceed under paragraph (A), the district attorney shall file a certification with the court of common pleas, which certification shall state whether prior approval of police complaints, or arrest warrant affidavits, or both shall be required, shall specify which offenses or grades of offenses shall require such prior approval, and shall also specify the date such procedure is to become effective.  The court of common pleas shall thereupon promulgate a local rule in the following form, setting forth the offenses or grades of offenses specified in the certification and stating whether prior approval of police complaints, arrest warrant affidavits, or both shall be required.

* * * *

Pa. R. Crim. P. 507(A)-(B).

of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. Nos. 2, 7.) The Motions are ripe for a decision.

## II.    BACKGROUND[2]

On March 18, 2016, Detective DiBattista, who is not a party to this litigation, executed a search warrant at Plaintiff's home located at 125 East Union Street, West Chester, Pennsylvania. (Id. ¶¶ 2, 7.) Before executing the warrant, and while the criminal prosecution was still in the "investigative phase," Detective DiBattista sought advice from Assistant District Attorney Pierce on whether probable cause existed to support the warrant. (Id. ¶¶ 8, 9.) Defendant Pierce advised Detective Battista that the warrant application was sufficient and supported by probable cause. (Id. ¶¶ 11, 14.) After speaking with Detective DiBattista, Defendant Pierce approved the warrant application for submission to a judicial officer.[3] (Id. ¶ 9.) Plaintiff contends that Pierce based his decision to approve the warrant application on Pennsylvania Rules of Criminal Procedure 201(1) and 507, which apply to the issuance of search warrants and arrest warrants,

---

[2]    When analyzing the sufficiency of pro se Complaints, courts in the Third Circuit must liberally construe the pleadings. Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002). The following facts are taken from the Complaint and are accepted as true for purposes of the Motion to Dismiss.

[3]    Based on the evidence seized during the execution of the search warrant, Plaintiff was charged with the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance in violation of 35 Pa. Stat. § 780-113(a)(30); knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered in violation of 35 Pa. Stat. § 780-113(a)(16); use of, or possession with intent to use, drug paraphernalia in violation of 35 Pa. Stat. § 780-113(a)(32); and disorderly conduct by creating a hazardous or physically offensive condition in violation of 18 Pa. Cons. Stat. § 5503(a)(4). (Doc. No. 2-3 at 3); Criminal Docket at 3, Commonwealth of Pa. v. Richardson, No. CP-15-CP-0001534-2016 (Chester Cty. C.C.P. 2016).

On June 1, 2017, in the Court of Common Pleas of Chester County, Plaintiff pled guilty to the summary offense of disorderly conduct. (Doc. No. 5 at 10); Criminal Docket at 3. All other charges against him were withdrawn. Criminal Docket at 3.

respectively.[4]  (Id.)  Plaintiff alleges that Defendant Pierce's reliance upon Rules 201(1) and 507 was misplaced.  (Id. ¶ 10.)  He argues that these Rules apply to arrest warrants and not to search warrants.  (Id.)

On May 1, 2017, Plaintiff instituted this action in the Court of Common Pleas of Chester County.  (Doc. No. 1 at 6.)  On May 24, 2017, Defendants Pierce and Hogan removed the case to this Court pursuant to 28 U.S.C. § 1441, the removal statute.  (Doc. No. 1.)  On May 26, 2017, Defendants Pierce and Hogan filed a Motion to Dismiss the claims against them pursuant to Rule 12(b)(6) for failure to state a claim.  (Doc. No. 2.)  On June 8, 2017, Plaintiff filed a Response in Opposition.  (Doc. No. 5.)  On June 16, 2017, Defendant County of Chester also filed a Motion to Dismiss under Rule 12(b)(6).  (Doc. No. 7.)  The Motions to Dismiss are presently before this Court for a decision.[5]

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to

---

[4]    In the Complaint, Plaintiff does not plead facts to show how he was aware that Defendant Pierce relied on Rules 201(1) and 507.

[5]    In reaching a decision, the Court has considered the Complaint (Doc. No. 1), Defendants Pierce and Hogan's Motion to Dismiss (Doc. No. 2), Plaintiff's Response in Opposition to Defendants Pierce and Hogan's Motion to Dismiss (Doc. No. 5), Defendants Pierce and Hogan's Reply (Doc. No. 6), Defendant County of Chester's Motion to Dismiss (Doc. No. 7), and Defendant County of Chester's letter to the Court dated September 6, 2017 (Doc. No. 10).

Plaintiff did not file a response to Defendant County of Chester's Motion to Dismiss. Pursuant to the July 13, 2017 Order, Plaintiff was required to respond to Defendant County of Chester's Motion to Dismiss by August 8, 2017.  (Doc. No. 9.)  No response was filed. On September 6, 2017, Defendant County of Chester filed the letter requesting that the Court dismiss with prejudice the claim against it in Count III because Plaintiff failed to respond to its Motion to Dismiss.  (Doc. No. 10.)

defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." Iqbal, 556 U.S. at 679

(alteration in original) (internal quotation marks omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

When determining a motion to dismiss, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Where, as here, the complaint is filed pro se, the "complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Fatone v. Latini, 780 F.3d 184, 193 (3d Cir. 2015) (quoting Haines v. Kerner, 404 U.S. 519, 520–21 (1972)). It should be dismissed only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief." Olaniyi v. Alexa Cab Co., 239 F. App'x 698, 699 (3d Cir. 2007) (citing McDowell v. Del. State Police, 88 F.3d 188, 189 (3d Cir. 1996)).

## IV. ANALYSIS

Plaintiff has filed suit under 42 U.S.C. § 1983 alleging that Defendants violated his Fourth and Fourteenth Amendment rights to the United States Constitution. Section 1983 provides that "[e]very person who, under color of [state law], . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. To state a § 1983 claim, Plaintiff must allege (1) "a violation of a right secured by the Constitution or laws of the United States" and (2) that the violation was "committed by a person acting under color of state law." Yoder v. MacMain Law Grp., LLC, 691 F. App'x 59, 60 (3d Cir. 2017) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

Defendants do not dispute that they were acting under color of state law.  Therefore, the Court will only analyze whether Plaintiff has stated a plausible claim for a violation of his constitutional rights.  Plaintiff alleges that his constitutional rights were violated when Defendant Pierce: (i) advised Detective DiBattista on whether the warrant application to search Plaintiff's home was supported by probable cause by relying on Pennsylvania Rules of Criminal Procedure 201(1) and 507, (ii) informed the Detective that the warrant application was supported by probable cause, and (iii) approved the warrant for submission to a judicial officer.  Pursuant to Rule 12(b)(6), Defendants seek to dismiss the Complaint in its entirety.  (Doc. Nos. 2, 7.)  Each of Defendants' arguments in support of dismissal will be addressed in turn.

## A.   Plaintiff's Claims Will Be Analyzed Under the Fourth Amendment

Defendants Pierce and Hogan argue that Plaintiff's claims should be analyzed under only the Fourth Amendment rather than under the Fourth and the Fourteenth Amendments.  (Doc. No. 2-1 at 5, Doc. No. 6 at 1-2.)  In response, Plaintiff asserts that his due process rights were violated under both the Fourth and the Fourteenth Amendment because the Fourth Amendment was incorporated into and applies to the states through the Fourteenth Amendment.  (Doc. No. 5 at 7-8.)

An individual's right under the Fourteenth Amendment to be free from criminal prosecution except upon probable cause does not sound in Fourteenth Amendment substantive due process.  Washington v. Hanshaw, 552 F. App'x 169, 172 (3d Cir. 2014) (citing Albright v. Oliver, 510 U.S. 226, 268 (1994)).  Instead, this right is "grounded on the Fourth Amendment's prohibition on unreasonable searches and seizures."  Id. at 172-73 (citing Albright, 510 U.S. at 273).  "[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more

generalized notion of substantive due process, must be the guide for analyzing these claims." Id. at 173 (quoting Albright, 510 U.S. at 273). Although the Fourth Amendment has been incorporated into and applies to the states through the Fourteenth Amendment, Mapp v. Ohio, 367 U.S. 643, 655 (1961), it is evident that Plaintiff's claims are grounded in the Fourth Amendment's prohibition of unreasonable searches and seizures. Therefore, the Court will analyze each of Plaintiff's claims only under the Fourth Amendment.

**B.     Plaintiff's Claim in Count I Against Defendant Pierce Will Be Dismissed**

**1.     Plaintiff Fails to State a Fourth Amendment Claim Against Defendant Pierce**

In Count I, Plaintiff alleges that Defendant Pierce advised Detective DiBattista that the search warrant was supported by probable cause and improperly applied Pennsylvania Rules of Criminal Procedure 201(1) and 507 in violation of Plaintiff's Fourth Amendment rights. (Doc. No. 1 at 8-9.) Plaintiff asserts that Rules 201(1) and 507 apply to arrests rather than to searches. (Id. ¶ 10.) Defendant Pierce argues to the contrary that the claim against him should be dismissed because Plaintiff has failed to allege a constitutional violation under the Fourth Amendment. (Doc. No. 2-1 at 5.)

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

U.S. Const. amend. IV.

Here, Plaintiff, as a pro se litigant, incorrectly contends that Rule 201(1) applies to arrest warrants. The Rule actually governs the issuance of search warrants. Rule 201(1) provides that "[a] search warrant may be issued for and to seize . . . contraband, the fruits of a crime, or things

otherwise criminally possessed." Pa. R. Crim. P. 201(1). Rule 202 of the Pennsylvania Rules of Criminal Procedure vests the district attorney of a county with the discretion to require assistant district attorneys to approve search warrant applications before that application is filed with a judicial officer. Rule 202 provides that "[t]he district attorney of any county may require that search warrant applications filed in the county have the approval of an attorney for the Commonwealth prior to filing." Pa. R. Crim. P. 202(A). The Chester County District Attorney requires such approval of search warrant applications. In this regard, Chester County Local Rule of Criminal Procedure 202 provides:

> The District Attorney of Chester County having filed a certification, pursuant to Pa.R.Crim.P. 202, search warrants shall not hereafter be issued by any judicial officer unless the warrant application has the approval of an attorney for the Commonwealth prior to filing.

Chester Cty. Local R. Crim. P. 202.

This Court is unaware of a case which holds that it is a constitutional violation for an assistant district attorney to advise a police officer regarding the sufficiency of a warrant and then to approve such warrant for submission to a judicial officer. See, e.g., Bamont v. Pa. Soc'y for the Prevention of Cruelty to Animals, 163 F. Supp. 3d. 138, 147-48 (E.D. Pa. 2016) (finding that execution of a search warrant was not illegal and no constitutional violation existed where search warrant was approved by assistant district attorney rather than district attorney himself).

To the contrary, Pennsylvania Rules of Criminal Procedure 201(1) and 202 provided the District Attorney with the authority to adopt a policy requiring assistant district attorneys to approve search warrant applications before filing the warrant application with a judicial officer. And pursuant to Chester County Local Rule 202, the Chester County District Attorney requires assistant district attorneys to approve search warrant applications before they are filed in Chester County. Therefore, Defendant Pierce correctly followed Chester County Local Rule 202 when

he advised the Detective regarding the sufficiency of the warrant application, when he informed him that it was supported by probable cause, and when he approved the warrant application for submission to a judicial officer.

Regarding Pennsylvania Rule of Criminal Procedure 507, it does not apply at all to search warrants, and a mere conclusory allegation that it was relied upon by Assistant District Attorney Pierce, without more, may be disregarded. In any event, the Rule grants a county district attorney with discretion to require assistant district attorneys in that county to approve arrest warrant applications that are filed with a judicial officer. As noted earlier, Rule 507 provides that "[t]he district attorney of any county may require that criminal complaints, arrest warrant affidavits, or both filed in the county by police officers, as defined by these rules, have the approval of an attorney for the Commonwealth prior to filing." Pa. R. Crim. P. 507. The Chester County District Attorney requires arrest warrant applications to be approved by assistant district attorneys. Chester County Local Rule of Criminal Procedure 507 provides:

> The District Attorney of Chester County having filed a certification pursuant to Pa.R.Crim.P. 507, criminal complaints and arrest warrant affidavits by police officers, as defined in the Rules of Criminal Procedure, charging the following offenses shall not hereafter be accepted by any judicial officer unless the complaint and affidavit have the approval of an attorney for the Commonwealth prior to filing . . .

Chester Cty. Local R. Crim. P. 507.

Plaintiff alleges no facts to support his contention that Defendant Pierce relied on this Rule in approving the Detective's search warrant application. And this Court is unaware of a case which holds that, without more, it is a constitutional violation for an assistant district attorney to mistakenly rely on a Rule of Criminal Procedure relating to arrest warrants when approving a search warrant application. Because Plaintiff has failed to plead a plausible Fourth Amendment claim against Defendant Pierce, Count I will be dismissed.

## 2.    Defendant Pierce Is Entitled to Qualified Immunity

In addition, Defendant Pierce argues that there is another reason to dismiss him as a Defendant.    He contends that because he was acting pursuant to Chester County District Attorney's Office policy, his actions were quasi-judicial, entitling him to absolute immunity. (Doc. No. 2-2 at 3-4.)  In response, Plaintiff argues that prosecutors are not entitled to immunity for giving probable cause advice to police during the investigative phase of a criminal case. (Doc. No. 5 at 8.)   Because Defendant Pierce was performing administrative duties at the investigative phase and was not acting as an advocate during the pursuit of a criminal prosecution, the Court finds that Defendant Pierce is entitled to raise qualified immunity rather than absolute immunity.  Despite the lower cloak of qualified immunity, however, Defendant Pierce is still entitled to dismissal of the claims filed against him based upon this type of immunity.

A district attorney has "absolute immunity for the initiation and pursuit of a criminal prosecution, including presentation of the state's case at trial."  Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)).  In addition, "a prosecutor enjoys absolute immunity for actions performed in a judicial or 'quasi-judicial' capacity."  Odd v. Malone, 538 F.3d 202, 208 (3d Cir. 2008) (citing Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994)).

When a prosecutor, however, "performs the investigative functions normally performed by a detective or police officer," he is entitled to qualified immunity.  Buckley, 509 U.S. at 273. Although "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity[,]" these actions are entitled to qualified immunity.  Id.; see also Kalina v. Fletcher, 522 U.S. 118, 129-31 (1997) (holding that a prosecutor's conduct in

preparing a "Certificate for Determination of Probable Cause" was not entitled to absolute immunity, but instead, qualified immunity applied during the pretrial investigative phase).  As such, a court must determine whether a prosecutor's actions were "quasi-judicial," entitling him to absolute immunity, or "administrative or investigatory," entitling him to qualified immunity. Odd, 538 F.3d at 208.

Courts in the Third Circuit have held that prosecutors are entitled to qualified immunity for their actions during the investigative phase of a criminal prosecution.  Several district courts have applied qualified immunity to conduct analogous to what Defendant Pierce did here.  For example, qualified immunity applied to a prosecutor who issued a subpoena in violation of Pennsylvania Rule of Criminal Procedure 107.  See Walker v. Coffey, Civ. A. No. 17-40, 2017 WL 1477144, at *6 (E.D. Pa. Apr. 24, 2017).  Qualified immunity also applied to a district attorney's conduct in instructing a detective to investigate an individual's compliance with sexual offender registration requirements.  See Spiker v. Allegheny Cty. Bd. of Prob. & Parole, 920 F. Supp. 2d 580, 594-96 (W.D. Pa. 2013), aff'd sub nom. Spiker v. Whittaker, 553 F. App'x 275 (3d Cir. 2014).  Finally, qualified immunity applied to a prosecutor's failure to approve a warrant in accordance with Rule 507.  See Tavenner v. Shaffer, Civ. A. No. 08-1089, 2008 WL 4861982, at *5 (M.D. Pa. Nov. 6, 2008).

In the instant case, Plaintiff alleges that Defendant Pierce provided advice to Detective DiBattista as to the sufficiency of the search warrant, informed the Detective that the warrant application was supported by probable cause, and approved such warrant for submission to a judicial officer.  (Doc. No. 1 at 8-9.)  These alleged actions involved administrative or investigatory duties that did not relate to Defendant Pierce's initiation of Plaintiff's prosecution. Put another way, Defendant Pierce was not acting as an advocate in this situation. See Buckley,

509 U.S. at 273. In fact, these actions occurred before the search warrant was executed and before any criminal charges were brought against Plaintiff. For this reason, Defendant Pierce's conduct in providing advice and approving the search warrant will be subject to qualified immunity rather than absolute immunity.

Having concluded that qualified immunity applies, the Court must now determine whether Defendant Pierce's conduct is entitled to qualified immunity. The doctrine of qualified immunity "shields government actors from suit 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Zaloga v. Borough of Moosic, 841 F.3d 170, 174 (3d Cir. 2016) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A qualified immunity determination requires a two-part inquiry. Id. First, a court must consider "whether the alleged facts, taken in the light most favorable to the injured party, 'show [that] the [government official]'s conduct violated a constitutional right.'" Id. (alterations in original) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). Second, a "court must ask whether the right was clearly established 'in light of the specific context of the case, [and] not as a broad general proposition.'" Id. (alteration in original) (quoting Saucier, 533 U.S. at 201).

Here, with respect to the first prong, because Defendant Pierce committed no constitutional violation, he is entitled to qualified immunity and dismissal of the constitutional claim against him in Count I. The Court's analysis could end now because a court is not required to analyze the second step of the qualified immunity test if no constitutional violation occurred. Scott v. Harris, 550 U.S. 372, 377 (2007) (stating that a court must only proceed to the second step of the qualified immunity analysis if it finds a constitutional violation); see also Reedy v.

13

Evanson, 615 F.3d 197, 223-24 (3d Cir. 2010) (explaining that no further inquiry is required if no constitutional violation is found). Nonetheless, the Court will briefly discuss the second prong.

Under the second prong of the test, qualified immunity applies unless the government official's conduct violated a clearly established constitutional right. Spiker v. Whittaker, 553 F. App'x 275, 279 (3d Cir. 2014) (citing Saucier, 533 U.S. at 201-02). "A right is clearly established if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. (quoting Saucier, 533 U.S. at 201). To determine this, a court must examine "the state of the existing law at the time of the alleged violation and the [specific] circumstances confronting the officer." Id. (quoting Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010)). If the conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," the state actor is shielded from liability. Id. (quoting Harlow, 457 U.S. at 818).

As stated above, Defendant Pierce's conduct did not violate Plaintiff's constitutional rights, and for this reason Defendant Pierce's Motion to Dismiss will be granted. But Defendant Pierce's Motion to Dismiss would also be granted based upon the second prong of the qualified immunity test because his alleged conduct did not violate clearly established law. As noted, this Court is not aware of any precedent that holds that it is unconstitutional for an assistant district attorney to advise a police officer as to the sufficiency of a search warrant. This Court is also unaware of a case that holds that it is a constitutional violation for an assistant district attorney to approve a search warrant application for submission to a judicial officer. Because Defendant Pierce did not violate a clearly established constitutional right, Plaintiff's claim against Defendant Pierce in Count I will be dismissed because he is cloaked with qualified immunity.

**C.** **Plaintiff's Claim in Count II Against Defendant Hogan Will Be Dismissed Because He Had a Policy Regarding Advising Police on Probable Cause and Because He Had No Personal Involvement in the Alleged Conduct**

In Count II, Plaintiff asserts that District Attorney Hogan violated his constitutional rights by failing to have in place a policy that prevents his subordinates from advising police regarding probable cause during the investigative phase of a criminal prosecution. (Doc. No. 1 ¶ 20.) Plaintiff also alleges that Defendant Hogan's conduct amounted to deliberated indifference because it was highly likely to result in a violation of Plaintiff's rights. (Id. ¶ 22.)

Defendant Hogan submits that the claim against him, whether brought in his individual or official capacity, should be dismissed for three reasons. First, Defendant Hogan asserts that a claim against him in his supervisory capacity based solely on the doctrine of respondeat superior is not actionable under § 1983. (Doc. No. 2-2 at 4.) Second, he argues that he had no personal involvement in the alleged conduct. (Id.) Third, Defendant Hogan contends that a claim against him in his official capacity is a claim against the County of Chester, which is also a defendant in this action. (Id. at 5-6.) The Court agrees with each of Defendant Hogan's arguments. Regarding his third argument, this Court also agrees that a claim brought against Defendant Hogan in his official capacity would be duplicative of the claim Plaintiff asserts against the County of Chester in Count III.[6] Therefore, the Court will analyze Plaintiff's claim as one brought against Defendant Hogan in his individual capacity.

---

[6] A liberal reading of the Complaint does not reveal whether Plaintiff intended to sue Defendant Hogan in his official capacity. A claim against a state employee in his official capacity is generally "another way of pleading an action against the entity of which an officer is an agent." Ali v. N.J. Superior Court Bd. of Bar Exam'rs, 494 F. App'x 262, 264 (3d Cir. 2012) (quoting Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)). Courts in the Third Circuit routinely dismiss claims against state actors in their official capacities where a claim has also been brought against the municipal entity that employs them. See, e.g., Fitzgerald v. Martin, Civ. A. No. 16-3377, 2017 WL 3310676, at *6 (E.D. Pa. Aug. 3, 2017) (dismissing claim against district attorney's office employees in their official capacities as duplicative of claim against the county). To the extent that the claim in Count II can be construed as one

First, Defendant Hogan cannot be held liable under a theory of supervisor liability based solely on the doctrine of respondeat superior. "[A] civil rights claim cannot proceed exclusively on a theory of respondeat superior." Addlespurger v. Corbett, 461 F. App'x 82, 86 (3d Cir. 2012) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)).

Plaintiff argues, however, that he has satisfied the Third Circuit's supervisory liability test as set forth in Brown v. Muhlenburg Township, 269 F.3d 205 (3d Cir. 2001). To state a claim for supervisor liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

Brown, 269 F.3d at 216. In addition, "it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more." Id. Instead, plaintiff "must identify specific acts or omissions of the supervisor that evidence deliberate indifference" to plead "that there is a 'relationship between the identified deficiency and the ultimate injury.'" Id. (quoting Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).

In the instant case, Plaintiff has failed to meet his burden of pleading supervisor liability against Defendant Hogan. Plaintiff merely alleges that Defendant Hogan, in his individual capacity, failed to have in place a policy that would prevent the alleged wrongdoing—assistant district attorneys advising police officers as to the adequacy of a search warrant. But Plaintiff has failed to identify specific acts or omissions of Defendant Hogan that amounted to deliberate indifference that led to his alleged ultimate injury.

brought against Defendant Hogan in his official capacity, this claim is duplicative of the claim brought against the County of Chester. For this reason, the claim in Count II against Defendant Hogan in his official capacity will be dismissed.

To the contrary, Defendant Hogan did have a policy in place for advising police officers as to whether a search warrant was supported by probable cause. The Chester County District Attorney's Office adhered to Chester County Local Rule 202. This Rule required assistant district attorneys to approve a search warrant application before it was filed with a judicial officer. This Court has already found that no constitutional violation resulted from Defendant Pierce's conduct in advising Detective DiBattista and approving the search warrant. Because Defendant Hogan had a policy in place which governed the conduct challenged here, Plaintiff has failed to plead a plausible claim for supervisory liability. For this reason alone, Plaintiff's claim against Defendant Hogan in Count II could be dismissed.

Second, the claim against Defendant Hogan in Count II fails because he had no personal involvement in the alleged conduct. Section 1983 liability cannot be imposed without a plausible allegation that defendant had personal involvement in the actions. Addlespurger, 461 F. App'x at 86 (citations omitted). Instead, "[a]n individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (brackets omitted) (quoting Rode, 846 F.2d at 1207). Personal involvement can be demonstrated "through allegations of personal direction or of actual knowledge and acquiescence." Id. (quoting Rode, 846 F.2d at 1207). In addition, to find a defendant liable under § 1983, "a causal link to, and direct responsibility for, the deprivation of rights" is required. Vu v. City of Philadelphia, Civ. A. No. 10-0953, 2012 WL 1222628, at *9 (E.D. Pa. Apr. 11, 2012) (citing Rizzo v. Goode, 423 U.S. 362, 370-71 (1976)) (dismissing claim against district attorney because plaintiff failed to allege that district attorney had any personal knowledge or acquiescence in the alleged wrongdoing).

In the instant case, Plaintiff has failed to allege that Defendant Hogan had any personal involvement in providing Detective DiBattista with probable cause advice. There is no allegation that Defendant Hogan personally directed Defendant Pierce to provide this advice. As such, Plaintiff has failed to allege a causal link to, or any direct responsibility for, Defendant Pierce's conduct. For this reason, the claim against Defendant Hogan in Count II will be dismissed.

### D. Plaintiff's Claim in Count III Against Defendant County of Chester Will Be Dismissed Because Plaintiff Has Failed to State a Claim for <u>Monell</u> Liability

In <u>Monell v. Department of Social Services</u>, the Supreme Court held that a municipality cannot be held liable for the acts of its employees under a theory of respondeat superior, but can only be held liable under § 1983 when the municipality's policy or custom inflicts the injury. 436 U.S. 658, 694-95 (1978). In Count III, Plaintiff alleges that the County of Chester violated his rights under the Fourth and Fourteenth Amendments by failing to have in place a policy to prevent district attorneys from advising police regarding whether a warrant application is supported by probable cause. (Doc. No. 1 ¶¶ 29-30.) As such, Plaintiff contends that the County of Chester was deliberately indifferent to his constitutional rights. (<u>Id.</u> ¶ 30.) In response, Defendant County of Chester asserts that this claim should be dismissed because Plaintiff has failed to plead a plausible claim for municipal liability against the County.[7] (Doc. No. 7-1 at 4.)

---

[7] Defendant County of Chester also argues that this Court should dismiss with prejudice the claim in Count III because Plaintiff failed to respond to the County's Motion to Dismiss. (Doc. No. 10.)

Local Rule of Civil Procedure 7.1(c) provides:

> [A]ny party opposing [a] motion shall serve a brief in opposition together with such answer or other response that may be appropriate within fourteen (14) days after service of the motion and supporting brief. In the absence of a timely response, the motion may be granted as uncontested . . . .

A county "cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior." Berg v. Cty. of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) (citing Monell, 436 U.S. at 691). Instead, to hold a municipality liable under § 1983, a plaintiff must plead that "a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694. An "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 60 (2011) (citing Monell, 436 U.S. at 691). Municipal liability requires "a two-step analysis: (1) whether [Plaintiff's] harm was caused by a constitutional violation, and (2) if so, whether the defendant is responsible for that violation." Peterson v. City of Uniontown, 441 F. App'x 62, 63 (3d Cir. 2011) (citing Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992)).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick, 563 U.S. at 61. To plead a plausible claim, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Id. (alteration in original) (quoting Canton v. Harris, 489 U.S. 378, 388 (1989)).

Pleading deliberate indifference requires "proof that the municipal actor disregarded a known or obvious consequence of his action." Id. (quoting Bd. of Cty. Comm'rs v. Brown, 520

Local R. Civ. P. 7.1(c). When a plaintiff is proceeding pro se, however, a court should not grant a motion to dismiss "without undertaking a merits analysis." Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991). Therefore, since Plaintiff is proceeding pro se, the Court will nonetheless analyze Plaintiff's claim in Count III on the merits to determine whether he has pled a plausible claim.

U.S. 397, 410 (1997)).  Generally, "[a] pattern of similar constitutional violations by untrained employees" is necessary to establish deliberate indifference for purposes of failure to train.  Id. at 62 (citing Brown, 520 U.S. at 409).  A single incident will not suffice for failure to train liability. Id. at 64.

Here, Plaintiff has alleged that the County of Chester failed to have a policy in place to prevent assistant district attorneys from providing probable cause advice to police officers and from counseling officers as to whether a search warrant is supported by probable cause.  (Doc. No. 1 ¶ 29.)  The Court has already found that no constitutional violation occurred.  In addition, however, Plaintiff has not pled a specific policy that the County of Chester failed to implement, which inflicted his alleged injury.  In fact, the County of Chester does not implement the Chester County District Attorney's policies—the District Attorney is vested with this authority.  See Pa. R. Crim. P. 202, 507.  And the District Attorney of Chester County does have a constitutional policy in place regarding the right of an assistant district attorney to review search warrant applications.  Moreover, Plaintiff has also failed to plausibly plead that the County of Chester disregarded a known or obvious consequence of failing to have a policy to prevent the alleged conduct, which would amount to deliberate indifference.

Even if Plaintiff had pled a specific policy which could arguably be unconstitutional, "[a] a pattern of similar constitutional violations by untrained employees" is generally necessary to establish deliberate indifference for failure to train liability.  Connick, 563 U.S. at 61 (citing Brown, 520 U.S. at 409).  Plaintiff has pled no facts showing a pattern of similar constitutional violations.  Because no constitutional violation occurred, and because Plaintiff has failed to plead

a specific policy on the part of Chester County that rises to the level of a constitutional violation, Plaintiff's claim in Count III will be dismissed.[8]

### E. Leave to Amend Will Not Be Granted

In the Complaint, Plaintiff seeks leave to amend.  (Doc. No. 1-1 ¶ 43.)  In the civil rights context, "when an individual has filed a complaint under § 1983 which is dismissible for lack of factual specificity, he should be given reasonable opportunity to cure the defect, if he can, by amendment of the complaint."  Kundratic v. Thomas, 407 F. App'x 625, 629-30 (3d Cir. 2011) (quoting Darr v. Wolfe, 767 F.2d 79, 81 (3d Cir. 1985)).  A court, however, "need not grant leave to amend a complaint if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'"  Id. at 630 (quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2002)).  Put another way, leave to amend must be granted "in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment."  Grayson v. Mayview State Hosp., 283 F.3d 103, 108 (3d Cir. 2002) (citation omitted).  Finally, a court may deny leave to amend when the "plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."  Kundratic, 407 F. App'x at 630  (quoting Krantz v. Prudential Invs. Fund Mgmt. LLC, 405 F.3d 140, 144 (3d Cir. 2002)).

Here, amendment will not be granted because it would be futile.  Defendants' Motions to Dismiss put Plaintiff on notice of the deficiencies in the Complaint.  See Kundratic, 407 F. App'x at 630.  They are not curable.  Further, Plaintiff's claims fail because the alleged conduct does not amount to a constitutional violation.  Therefore, amending the Complaint to include

---

[8]    Defendants Pierce and Hogan also argue that this Court should stay the case until the completion of Plaintiff's criminal trial.  (Doc. No. 2-2 at 6.)  On June 1, 2017, however, Plaintiff pled guilty to the summary offense of disorderly conduct.  (Doc. No. 5 at 10); Criminal Docket at 3.  In addition, this Court has concluded that Plaintiff's Complaint will be dismissed in its entirety pursuant to Rule 12(b)(6).  For these reasons, the Court will deny Defendants Pierce and Hogan's request to stay the case.

additional facts would not cure its deficiencies.  For this reason, amendment will not be granted, and the Complaint will be dismissed with prejudice.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss (Doc. Nos. 2, 7) will be granted.  An appropriate Order follows.